

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SIERRA CLUB, | § | |
| Appellant, | § | No. 08-13-00003-CV |
| v. | § | Appeal from the |
| ANDREWS COUNTY, TEXAS, ANDREWS INDUSTRIAL | § | 109th Judicial District Court |
| FOUNDATION, AND ANDREWS CHAMBER OF COMMERCE, | § | of Andrews County, Texas |
| Appellees. | § | (TC# 18,881) |
| | § | |

## **O P I N I O N**

Sierra Club appeals the denial of its motion to dismiss the claims asserted against it by Andrews Industrial Foundation, Andrews Chamber of Commerce, and Andrews County, Texas (Appellees). In a single issue, Sierra Club contends that Appellees' claims for declaratory judgment and tortious interference with a contract should have been dismissed pursuant to the Texas Citizens' Participations Act (Act). Concluding that Sierra Club is correct, we reverse and render, in part, and reverse and remand, in part.

### **FACTUAL AND PROCEDURAL BACKGROUND**

This case is related to the on-going legal battle over the disposal of radioactive material in

West Texas.[1]    It began in 2004 when Waste Control Specialists, LLC (WCS) applied to the Texas Commission on Environmental Quality (TCEQ) for a license to construct and operate a facility in Andrews County, Texas for the disposal of low-level radioactive waste.[2]    Sierra Club requested a contested case hearing before TCEQ on this application.    TCEQ denied Sierra Club's request and approved the application in January 2009.    Sierra Club sought judicial review of that decision by filing several suits in Travis County, Texas that were consolidated into one cause.

In May 2009, the citizens of Andrews County voted to issue $75 million in bonds related to the development and construction of the disposal facility.    Andrews County utilized the bond funds to purchase land and assets associated with the facility that it then leased to WCS in December 2010.    The facility began receiving low-level radioactive waste in late April 2012 when it received permission to do so from TCEQ.    Approximately three weeks later, on May 14, 2012, a Travis County district court ruled that TCEQ had erred by denying Sierra Club's hearing request regarding WCS's application, reversed TCEQ's decision, and remanded the matter to

---

[1] Although most of the battle has been waged in the district courts of Travis County and in the Third Court of Appeals—as related below—this Court has seen its share of skirmishes.    *See In re Sierra Club*, No. 08-12-00236-CV, 2012 WL 5942912 (Tex.App.--El Paso Nov. 28, 2012, orig. proceeding)(in part denying Sierra Club's request to compel the trial court to withdraw a temporary restraining order prohibiting the Sierra Club from seeking injunctive relief to prohibit shipments of low-level radioactive waste to a disposal facility in Andrews County because Sierra Club had not moved to transfer venue prior to filing its mandamus petition and the trial court had not had an opportunity to rule on such a motion); *In re Sierra Club*, No. 08-12-00282-CV, 2012 WL 5949789 (Tex.App.--El Paso Nov. 28, 2012, orig. proceeding)(denying Sierra Club's request to compel the trial court to withdraw order granting discovery while Sierra Club's motion to dismiss filed pursuant to Section 27.003 of the Texas Civil Practice and Remedies Code is pending because Sierra Club failed to show it was entitled to mandamus relief).

[2] WCS also applied for a license to construct and operate a facility in Andrews County for the disposal of below-grade radioactive by-product material.    That license was granted by TCEQ in May 2008.    Sierra Club sought judicial review of that decision, but did not prevail in the trial court.    *See Sierra Club v. Texas Commission on Environmental Quality*, cause number D-1-GN-08-003021.    Sierra Club appealed to the Third Court of Appeals in Austin.    *See Sierra Club v. The Texas Commission on Environmental Quality and Waste Control Specialists LLC*, appellate cause number. 03-11-00102-CV.    The appeal is pending as of the date of this opinion.    Although this litigation is not material to the disposition of this case, we mention it because it provides contextual background.

2

TCEQ to allow Sierra Club to participate in a contested-case hearing.[3]   Ten days later, Sierra Club filed a new suit against the TCEQ in Travis County challenging the Commission's decision authorizing WCS to begin accepting low-level radioactive waste.[4]

While that lawsuit was pending, Andrews County sued Sierra Club in late June 2012 in the state district court of Andrews County.   The County—later joined by Andrews Industrial Foundation and Andrews Chamber of Commerce—brought a claim for tortious interference with the lease agreement between it and WSC and sought declaratory judgments regarding the validity of certain provisions of the lease and the applicability of a venue provision in the Texas Water Code.   The County asserted that Sierra Club's repeated threats to seek injunctive relief prohibiting the shipment of waste to the disposal facility and to file other suits in Travis County established the bases for its claims.

Sierra moved for dismissal of Appellees' claims pursuant to the Act, sanctions, and attorney's fees and costs.   After Appellees responded, the trial court heard the motion to dismiss and took it under advisement.   Because the trial court did not rule on the motion within thirty days after the hearing, the motion was denied by operation of law.[5]   *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.008(a)(West Supp. 2013)("If a court does not rule on a motion to dismiss under Section

---

[3] TCEQ and WCS have appealed that decision to the Third Court of Appeals in Austin and superseded the trial court's judgment.   The appeal is pending as of the date of this opinion.   *See The Texas Commission on Environmental Quality and Waste Control Specialists LLC v. Sierra Club*, appellate cause number. 03-12-00335-CV.

[4] *See Sierra Club v. Texas Commission on Environmental Quality*, cause number D-1-GN-12-001586.

[5] Despite this, the trial court issued a written order denying the motion twenty days after the deadline for ruling on the motion had passed.   The order—though included in the record on appeal—is of no effect. *Jain v. Cambridge Petroleum Grp., Inc.*, 395 S.W.3d 394, 396 (Tex.App.--Dallas 2013, no pet.)("The trial court's signing the order denying the motion [to dismiss pursuant to the Act] after it was already denied by operation of law is legally of no effect because the motion to dismiss was already denied."); *Teran v. Fryer*, 586 S.W.2d 699, 700 (Tex.Civ.App.--Corpus Christi 1979, writ ref'd)(holding that an order purporting to overrule a motion for new trial that had already been overruled by operation of law was a nullity).

3

27.003 [not later than the 30th day following the date of the hearing on the motion], the motion is considered to have been denied by operation of law and the moving party may appeal.").

## DISMISSAL UNDER THE ACT

In a single issue, Sierra Club contends that the trial court failed to comply with the Act in denying its motion to dismiss. We agree.

### *Applicable Law*

The Texas Legislature enacted the Act "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX.CIV.PRAC.&REM.CODE ANN. § 27.002 (West Supp. 2013). To achieve these ends, the Legislature provided that if a legal action is brought in response to a party's exercise of the right of free speech, the right to petition, or the right of association, that person may move to dismiss the action. *Id*. at § 27.003(a). The movant bears the initial burden to show by a preponderance of the evidence that the action "is based on, relates to, or is in response to the party's exercise" of any of the aforementioned constitutional rights. *Id*. at § 27.005(b)(1). If the movant satisfies this burden, then the trial court must dismiss the legal action unless the party who brought the action "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. at §§ 27.005(b)(1), 27.005(c).

The Act does not define the phrases "clear and specific evidence" and "prima facie case." Those terms have been defined by case law, however. "Clear and specific evidence" is defined as "evidence unaided by presumptions, inferences or intendments." *McDonald v. Clemens*, 464

4

S.W.2d 450, 456 (Tex.Civ.App.--Tyler 1971, no writ); *see also S. Cantu & Son v. Ramirez*, 101 S.W.2d 820, 822 (Tex.Civ.App.--San Antonio 1936, no writ). "Prima facie evidence" is defined as "evidence that, until its effect is overcome by other evidence, will suffice as proof of a fact in issue." *Duncan v. Butterowe, Inc.*, 474 S.W.2d 619, 621 (Tex.Civ.App.--Houston [14th Dist.] 1971, no writ). "In other words, a prima facie case is one that will entitle a party to recover if no evidence to the contrary is offered by the opposite party." *Id.*, *citing Simonds v. Stanolind Oil & Gas Co.*, 134 Tex. 332, 136 S.W.2d 207, 209 (1940)(opin. adopted).

### *Standard of Review*

Invoking the argument that "the TCPA is similar to other statutes providing for sanctions," Appellees urge us to employ an abuse-of-discretion standard in reviewing a trial court's order under the Act. But the proper standard of review is *de novo*. *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 724-27 (Tex.App.--Houston [14th Dist.] 2013, pet. denied)(rejecting abuse-of-discretion standard and instead adopting *de novo* standard to gauge propriety of trial court's actions under the Act). Accordingly, we review *de novo* whether: (1) the movant satisfied the initial burden imposed by Section 27.005(b); and (2) the non-movant satisfied the burden imposed by Section 27.005(c). *Id.* at 725-27.

Appellees further contend that a non-movant satisfies its burden under Section 27.005(c) if "the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." However, the purposeful inclusion of a "clear and specific evidence" requirement indicates that the non-movant must satisfy an elevated evidentiary standard showing "clear and specific" evidence rather than just "some" evidence to avoid dismissal under Section 27.005(c). *Rehak Creative Servs.*, 404 S.W.3d at 726. Accordingly, our inquiry is limited to determining "*de*

5

*novo* whether the record contains a minimum quantum of clear and specific evidence that, unaided by inferences, would establish each essential element of the claim in question if no contrary evidence is offered." *Rehak Creative Servs., Inc.,* 404 S.W.3d at 727.

## DECLARATORY JUDGMENT CLAIMS

As was mentioned above, Andrews County sought two declaratory judgments from the trial court. One concerned the construction and validity of several provisions of the County's lease with WSC and the other mandatory venue under the Texas Water Code. On appeal, Sierra Club argues, in essence, that neither declaratory judgment action concerns a justiciable controversy. We agree.

### *Applicable Law*

A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995). To constitute a justiciable controversy, a real and substantial controversy involving a genuine conflict of tangible interests must exist. *Id*. A justiciable controversy does not exist if a court is called upon to adjudicate hypothetical or contingent situations or to determine questions not then essential to the decision of an actual controversy, even though the questions may require adjudication in the future. *Firemen's Ins. Co. of Newark, N.J. v. Burch*, 442 S.W.2d 331, 333 (Tex. 1968). A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution. TEX.CONST. art. II, § 1; *see Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211 (Tex. 2002); *Texas Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 444 (Tex. 1993).

6

*Discussion*

We begin our discussion by addressing Appellees' argument that Sierra Club failed to meet its initial burden under Section 27.005(b) to show that both of Appellees' declaratory judgment claims are based on, related to, or in response to Sierra Club's exercise of its First Amendment rights.  In making this argument, Appellees rely on several California cases concluding that the plaintiffs' injuries were caused by an action that was distinct from the protected activity and therefore not protected by the anti-SLAPP statute.  *See e.g.*, *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 181 Cal.App.4th 1207, 1220, 104 Cal.Rptr.3d 692, 701 (2010)(concluding that the anti-SLAPP statute did not apply to suit against the city for its failure to use a competitive bidding process in awarding a painting contract because plaintiff's claims were based on the city's decision to forgo bidding process altogether, not the city officials' protected deliberations regarding the bids); *City of Cotati v. Cashman*, 52 P.3d 695, 702-03 (Cal. 2002)(concluding that the anti-SLAPP statute did not apply to the city's state court action for declaratory relief respecting the constitutionality of a mobile-home park rent stabilization ordinance that the city had filed in response to a federal court declaratory relief action brought by park owners respecting the same ordinance because the city's claims in the state action arose from the underlying controversy respecting the ordinance and not from the filing of the federal action).  But those cases are inapposite.

Unlike *Graffiti Protective Coatings* and *Cashman*, the protected activity here—threating to enjoin shipment of radioactive waste to WSC's facilities—is the specific conduct complained of, from which all the other allegations of wrongdoing emanate and around which they revolve.  In other words, the threat of injunctive relief was the act that led to Appellees' claims.  Because the

claims brought by Appellees arose from protected activity, the burden shifted to them under Section 27.005(c) to establish by clear and specific evidence a prima facie case for each essential element of their declaratory judgment claims.

## 1. Lease Agreement

Andrews County asked the trial court to make several declarations regarding certain provisions of its lease with WSC. Chief among the declarations sought was the following: "that [the County's] tenant, WSC, is in compliance with Lease Agreement Section 6.6(b)(iv) providing that it 'maintain in full force and effect all Environmental Permits necessary to the operation of the Leased Assets,' and that it may lawfully accept waste shipments."

Sierra Club argues that there is no justiciable controversy regarding the lease because its conduct cannot give rise to dispute regarding the validity of a lease agreement to which it is not a party and because there is no dispute between Andrews County and WCS about WCS's responsibilities under the lease. Appellees maintain that, notwithstanding that Sierra Club is not a party to the lease or a third-party beneficiary of the lease, a justiciable controversy exists between them and Sierra Club over whether WCS complied with its contractual obligations to operate with all necessary permits. As authority for the proposition that parties to a contract who "agree on the validity of their contract" can bring a declaratory judgment action against a non-party, Appellees cite *In re Continental Airlines, Inc.*, 988 S.W.2d 733 (Tex. 1998)(orig. proceeding). But Appellees' reliance on *Continental Airlines* is misplaced.

In *Continental Airlines*, the issue was whether venue for the underlying declaratory-judgment actions was mandatory in the counties where the relators were domiciled. 988 S.W.2d at 734. The City of Fort Worth filed suit for a declaratory judgment to have a Tarrant

8

County district court declare its rights under agreements with the City of Dallas as to three airlines attempting to fly out of Love Field in Dallas. *In re Continental Airlines, Inc.*, 988 S.W.2d at 735. After their motions to transfer venue to Dallas County were denied, the three airlines filed a petition for writ of mandamus asserting that venue was mandatory in Dallas County because the ultimate relief that the City of Fort Worth was seeking was injunctive. *Id*. at 736. In its pleadings, the City of Fort Worth sought only a declaratory judgment and never sought any relief suggesting an injunction. *Id*. However, the airlines contended that the City of Fort Worth would be able to obtain a declaratory judgment and then use injunctive remedies to enforce it. *Id*. The Texas Supreme Court concluded that venue was proper in Tarrant County because "[t]he mere possibility that a defendant will disobey the final judgment of a court, causing [a plaintiff] to resort to enforce its judgment through injunction, does not transform the suit into an injunction suit under . . . § 65.023(a)." *Id*. at 736-37. In reaching this conclusion, the court noted that "the pleadings state a justiciable controversy that may be fully resolved by declaratory judgment." *Id*. at 737.

The issue here is not, as it was in *Continental Airlines*, whether the mandatory venue provision for injunctions applies in light of the relief sought in the pleadings is purely or primarily injunctive. Rather, the issue here is whether a justiciable controversy exists between a non-party to a lease agreement and the two parties to the lease who "agree on the validity of their contract" but take issue with the conduct of the non-party. Appellees have failed to show that Sierra Club had a justiciable interest concerning the interpretation of the lease between the County and WCS. *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007)(per curiam)(holding that plaintiffs did not have standing to bring a declaratory judgment action in either a third-party beneficiary, individual, or associational capacity because there was nothing in the contract

9

between a conservation district and a city concerning rates charged to the city that conferred "donee- or creditor-beneficiary standing upon the plaintiffs to challenge the contract's terms.").

The controversy here centers on the actions taken by Sierra Club to enjoin waste shipments to WCS's facilities, not on any action taken by, or contemplated by, WCS regarding its contractual performance under the lease. Accordingly, we conclude that there is no real and substantial controversy between Andrews County and WCS involving a genuine conflict as to their interests in the lease agreement. *See Beadle*, 907 S.W.2d at 467.

Appellees did not satisfy their burden under Section 27.005(c) to establish by clear and specific evidence of a prima facie case on each of the elements of its declaratory judgment claim regarding the validity and construction of the lease agreement.[6] Accordingly, the trial court erred in failing to dismiss this claim.

### 2. Venue Under the Texas Water Code

The County sought a declaratory judgment that mandatory venue for any suit brought by Sierra Club to enjoin WCS would lie in Andrews County, not Travis County, pursuant to Section 7.357 of the Texas Water Code. Sierra Club contends that "there is simply no legal controversy regarding the application or construction of Section 7.357" and therefore "no legal basis for the declaratory relief requested by [Appellees]." Appellees counter that there is a controversy regarding the meaning of Section 7.357 because their "financial interests would be threatened in any suit against WCS" and they therefore "have an interest in litigating issues in their own County

---

[6] Appellees also insist that Sierra Club "failed in its motion to dismiss or at any other time to offer any evidence (let alone a preponderance of the evidence) to the trial court that the Lease Agreement declaratory-judgment claim is covered by the [Act][.]" However, the record belies Appellees' assertion. Sierra Club alleged the following in its motion to dismiss: "Because Plaintiffs' claims stem from Sierra Club's exercise and protection of First Amendment Rights, Sierra Club moves to dismiss Plaintiffs' claims, pursuant to the Act. *Id.* § 27.005(b)." Moreover, as we noted above, the threat of injunctive relief sought by Sierra was the act that led to Appellees' claims.

pursuant to the statute . . . ." Appellees, however, never raised this argument in the trial court, nor do they cite any supporting authority for their argument. But more important, there simply is no live justiciable, controversy regarding the applicability of Section 7.357.

There is no allegation or evidence that Sierra Club has sought judicial relief based on Section 7.357, nor is there any allegation or evidence that, if Sierra Club were to do so, Appellees would be parties to that lawsuit. Instead, Appellees—as they so candidly admit in their response to Sierra Club's motion to dismiss—seek the trial court's interpretation of Section 7.357 to "properly direct[]" "Sierra Club's future actions." But, as was noted above, the trial court cannot render declarations regarding future, hypothetical situations. *See Firemen's Ins. Co.*, 442 S.W.2d at 333. Based on the pleadings, there is no live controversy between Appellees and Sierra Club involving a genuine conflict of tangible interests that would be resolved by the declaration sought by Appellees.

Appellees did not satisfy their burden under Section 27.005(c) to establish by clear and specific evidence of a prima facie case on each of the elements of its declaratory judgment claim regarding Section 7.357 of the Texas Water Code. Accordingly, the trial court erred in failing to dismiss this claim.

## TORTIOUS-INTERFERENCE CLAIM

Appellees do not argue that their claim for tortious interference with the lease agreement is not based on, related to, or in response to Sierra Club's exercise of its First Amendment rights. Rather, Appellees assert that they presented clear and specific evidence of a prima facie case on each element of their tortious-interference claim. Thus, we need not concern ourselves with determining whether Sierra Club satisfied its initial burden under Section 27.005(b). Instead, we

11

limit our inquiry to determine *de novo* whether Appellees met their burden under Section 27.005(c) to establish by clear and specific evidence a prima facie case for each essential element of their tortious-interference claim. We conclude that they did not.

### *Applicable Law*

The elements of a claim for tortious interference with an existing contract are: (1) the existence of a valid contract; (2) the defendant's willful and intentional interference with that contract; (3) the interference proximately caused the plaintiff's damage; and (4) the plaintiff incurred actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). On appeal, Sierra Club does not dispute that the County had a lease agreement with WCS subject to interference, but does argue that the County did not present clear and specific evidence of a prima facie case on each of the remaining three elements. We agree.

### *Discussion*

Appellees did not present clear and specific evidence of a prima facie case that they incurred actual damage or loss. On appeal, Appellees contend that they are entitled to interest from the four-month delay in receiving $47,137 in revenue from the University of Texas for disposing of waste. But Appellees did not plead the loss of interest as damages they incurred in their petition nor did they raise it in their response to Sierra Club's motion to dismiss. More importantly, Appellees presented no evidence on the amount of interest that they allegedly lost. The following statement in the affidavit executed by a consultant for WCS to which Appellees direct us does not constitute clear and specific evidence of interest lost as a result of a delay: "The price for disposal of the 633.90 cubic feet of waste from UT was $71.00 per cubic foot, which equals approximately $47,137 . . . ."

12

Appellees also contend that they "established enough evidence to support a rational inference that many incalculable revenues have been lost because Sierra Club's actions kept other waste generators from contracting with WCS." The evidence to which Appellees refer is the testimony of the county judge of Andrews County that the decision by "a major player" not to send waste to the disposal facility "could be a lot of money for us . . . ." This testimony does not constitute clear and specific evidence of a prima facie case that Appellees incurred *actual* damage or loss as a result of lost revenue. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)(lost profits "must be shown by competent evidence with reasonable certainty" and competent evidence consists of "opinions or estimates of lost profits . . . based on objective facts, figures, or data from which the amount of lost profits can be ascertained").

Appellees did not satisfy their burden under Section 27.005(b) to establish by clear and specific evidence of a prima facie case on each of the elements of its tortious interference claim. Accordingly, the trial court erred in failing to dismiss this claim.

Sierra Club's issue is sustained.

## DISPOSITION

Appellees contend that "[i]f this Court finds there is no evidence of a particular claim, the only equitable and appropriate remedy is to remand to the trial court for discovery and further proceedings" given that Sierra Club has invoked the "judicial machinery to evade the [Act], the trial court's [discovery] order, and this Court's orders related to discovery." But the question of whether the trial court should have granted the motion pursuant to the Act is purely one of law based on the evidence the trial court had before it when disposing of the motion. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.006(a)(West Supp. 2013)("In determining whether a legal

13

action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."). Given this, it is our duty to render the judgment that the trial court should have rendered. *See* TEX.R.APP.P. 43.3 ("When reversing a trial court's judgment, the court must render the judgment that the trial court should have . . . ."); *Staley v. Zimmite Corp.*, 565 S.W.2d 335, 337 (Tex.Civ.App.--Houston [14th Dist.] 1978, no writ)("In this case, however, the trial court has already made the factual determination of the amount of money that would constitute reasonable attorney's fees; the question of whether Staley should be awarded those fees is purely one of law. It is the duty of this court to render the judgment that the trial court should have rendered."). Accordingly, we reverse the trial court's judgment and render judgment granting Sierra Club's motion to dismiss the claims brought against it by Appellees.

Sierra Club urges us to award it attorney's fees and costs and award sanctions against Appellees or, in the alternative, to remand these issues back to the trial court. As the prevailing party, Sierra Club is entitled to an award of reasonable attorney's fees and costs established by the evidence. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.009(a)(1)(West Supp. 2013)(award of attorney's fees mandatory if motion for dismissal granted). If testimony from trial counsel is clear, direct, positive, uncontroverted, and incapable of being discredited or impeached, testimony from trial counsel establishes a party's right to attorney's fees and costs as a matter of law, especially when the opposing party had the means and opportunity to disprove the testimony and failed to do so. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990); *Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989). In such circumstances, it is proper for an appellate court to render judgment for fees and costs in the amount proved. *See Ragsdale*,

14

801 S.W.2d at 882.

Here, there was uncontested evidence regarding the amount of fees and costs that were reasonably and necessarily incurred in pursuing Sierra Club's motion to dismiss. At the hearing on the motion, Sierra Club introduced into evidence reports detailing fees and expenses and testimony from its counsel, Marisa Perales, in support of its request for attorney's fees and costs. Perales testified that—as shown in the reports admitted without objection—Sierra Club had incurred $43,180 in attorney's fees, $6,700 in legal assistant fees, and $9,001.62 in expenses in defending this lawsuit.[7] She also testified to conditional appellate fees, estimating that $7,500 would be expended for this appeal and an additional $17,000 for proceedings at the supreme court. Although they had the opportunity, Appellees did not question Perales. Because the evidence in support of attorney's fees and costs was clear, direct, positive, and uncontroverted and was neither discredited nor impeached, it conclusively establishes Sierra Club's entitlement to: (1) $49,980 in legal fees and $9,001.62 in expenses for trial in the present case; and (2) $7, 500 in appellate attorney's fees for prevailing in this Court. Accordingly, we render judgment for fees and costs in those amounts. In addition, if this case proceeds to the Texas Supreme Court and Sierra Club prevails there, we render judgment awarding Sierra Club additional appellate attorney's fees in the amount of $17,000. *See Gilbert v. City of El Paso*, 327 S.W.3d 332, 337 (Tex.App.—El Paso 2010, no pet.)(recovery of appellate attorney's fees is conditioned on prevailing on appeal).

We, however, do not reach the same conclusion with respect to Sierra Club's request that we render judgment for an award of sanctions against Appellees. Pursuant to the Act, "the court

---

[7] Perales testified that the fees and expenses Sierra Club was seeking also included fees and costs incurred in bringing the original proceedings identified above in footnote one. Appellees, however, failed to object to Perales's testimony on the basis that she failed to segregate fees and expenses among Sierra Club's various legal proceedings. By failing to do so, Appellees waived any complaint they may have had. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988).

shall award to the moving party . . . sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions . . . ." TEX.CIV.PRAC.&REM.CODE ANN. § 27.009(a)(2). Perales testified that Sierra Club was seeking $15,000 in sanctions because the county official verifying Appellees' petitions was unfamiliar with the factual allegations in the petitions. In essence, Sierra Club was seeking sanctions against Appellees for filing "groundless" pleadings because the pleadings had no basis in fact. *See* TEX.R.CIV.P. 13. But for sanctions to be imposed against a party, the party moving for sanctions bears the burden to show that the pleadings are not only groundless, but also brought in bad faith or to harass. *See id.* Here, Sierra Club did not introduce any evidence conclusively proving that Appellees filed their lawsuit in bad faith or to harass. The one piece of evidence Appellees offered—a final judgment rendered in a similar case awarding $15,000 in sanctions—was not admitted by the trial court. Because Sierra Club did not show as a matter of law that it was entitled to an award of sanctions against Appellees, we do not render judgment in its favor, but instead remand that issue back to the trial court for further proceedings.

## CONCLUSION

The trial court's judgment denying Sierra Club's motion to dismiss is reversed, and judgment is rendered granting the motion and awarding Sierra Club $49,980 in legal fees, $9,001.62 in expenses, $7,500 in appellate attorney's fees, and in addition, $17,000 in appellate attorney's fees if Appellant prevails in the Supreme Court of Texas. The issue of sanctions, however, is remanded back to the trial court.

December 6, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

16