ACCEPTED
03-11-00102-CV
3775257
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/14/2015 11:11:20 PM
JEFFREY D. KYLE
CLERK

**No. 03-11-00102-CV**

**IN THE THIRD COURT OF APPEALS**
**AUSTIN, TEXAS**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/14/2015 11:11:20 PM
JEFFREY D. KYLE
Clerk

**Sierra Club,**
*Appellant*

**v.**

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY AND**
**WASTE CONTROL SPECIALISTS,**
*Appellees*

On appeal from the 201st Judicial District Court
Travis County, Texas
Cause No. D-1-GN-08-003021

**APPELLANT'S MOTION FOR REHEARING EN BANC**

Marisa Perales
State Bar No. 24002750

*FREDERICK, PERALES,*
*ALLMON & ROCKWELL, P.C.*
707 Rio Grande, Suite 200
Austin, Texas 78701
Telephone (512) 469-6000
Facsimile (512) 482-9346
marisa@lf-lawfirm.com

COUNSEL FOR SIERRA
CLUB

January 14, 2015

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

Appellant Sierra Club submits this motion for rehearing en banc.[1] *See* Tex. R. App. P. 49.5 & 49.7. In support, Sierra Club respectfully offers the following:

## I. Summary of Argument

Although the Court modified its original opinion in this case to address some of the citation errors, the Court's modified opinion continues to raise concerns regarding the standard of review to be applied to an agency decision denying a request for a contested case hearing, particularly when no opportunity to develop an evidentiary record has been afforded the hearing requestor.

In affirming the Commission's decision in this case,[2] the Court employed a substantial evidence standard of review, looking to the record for some information

---

[1] Because this Court's decision and analysis in this case is similar to the one reached in *Texas Commission on Environmental Quality v. Sierra Club*, No. 03-12-00335-CV (Tex. App.—Austin, Apr. 18, 2014, no pet. h.) (the "low-level radioactive waste case), and the potential impact of the two decisions is similar, the arguments presented in this Motion for Rehearing En Banc are similar to the ones presented in Sierra Club's Motion for Rehearing En Banc, filed on this same day, in the low-level radioactive waste case.

[2] The Court states that this "facility" has been and is the subject of numerous lawsuits and cites a number of causes for support. But this by-product disposal facility is actually not the subject of numerous lawsuits. The cases out of the El Paso Court of Appeals this this Court cites, *In re Sierra Club*, 420 S.W.3d 153 (Tex. App.—El Paso Nov. 28, 2012, orig. proceeding); *Sierra Club v. Andrews County*, 418 S.W.3d 711 (Tex. App.—El Paso 2013, pet. filed); and *In re Sierra Club*, No. 08-12-00282-CV, 2012 WL 5949789 (Tex. App.—El Paso 2012, orig. proceeding, mem. op.), involved a SLAPP (Strategic Lawsuits Against Public Participation) suit against Sierra Club by Andrews County and others. By their lawsuit, the plaintiffs complained about Sierra Club's legal challenges to the low-level radioactive waste disposal facility, not this by-product disposal facility. Andrews County has a financial interest in the low-level radioactive waste disposal facility and accused Sierra Club of interfering with its ability to maximize profits from the facility. Andrews County does not have the same financial interest in the by-product disposal facility. Similarly, *Texas Commission on Environmental Quality v. Sierra Club*, No. 03-

that supports the agency's decision and granting significant deference to that decision. In doing so, the Court has essentially decided that constitutional standing analysis has no place in administrative law proceedings.

The Court cites to *Texas Commission on Environmental Quality v. City of Waco*, 413 S.W.3d 409 (Tex. 2013), and *Texas Commission on Environmental Quality v. Bosque River Coalition*, 413 S.W.3d 403 (Tex. 2013) in support of this proposition. But the Court reads too much into those decisions. Those decisions did not do away with constitutional standing law, as explained more fully below; nor did they adopt a substantial evidence standard of review, when no opportunity to develop the evidence has been provided.

The inevitable result of this Court's decision, if it is not revised, is that virtually no hearing requestor will ever qualify as an affected person, under the Court's new analysis.

**II.    This Court's decision allows TCEQ to deny standing to almost any hearing requestor, based on information presented by TCEQ's staff and the permit applicant, and hearing requestors are left with no meaningful legal recourse.**

---

12-00335-CV; *Texas Commission on Environmental Quality v. Sierra Club*, No. 03-12-00625-CV, 2014 WL 902513 (Tex. App.—Austin Mar. 7, 2014, no pet. h.); and *In re Sierra Club*, No. 03-12-00712-CV, 2012 WL 6554812 (Tex. App.—Austin 2012, orig. proceeding, mem. op.), concern TCEQ's decision to grant WCS a license and the authorization to construct and operate the low-level radioactive waste disposal facilities, not the by-product facility.

3

In reaching its decision affirming TCEQ's denial of Sierra Club's hearing request, this Court conducted a substantial evidence review of the administrative record. The Court explained that the information contained in the administrative record and available to the commissioners—*i.e.*, the Executive Director's response to hearing requests, WCS's application, and the environmental analysis—provides a reasonable basis for TCEQ's decision. Slip op. at 14. *But see, e.g.,* 30 Tex. Admin. Code § 55.211(b) (listing the information—response to comments, requests for reconsideration, and requests for contested case hearing—TCEQ may consider in evaluating hearing requests for certain applications). The Court further reasoned that the record includes "evidence" that WCS's application met the statutory requirements for a by-product disposal license, and that the operation of the facility within the parameters of the draft license is not likely to contaminate the groundwater, soils, surface water, or air in the vicinity of the disposal site. Slip op. at 15. Thus, the Court concluded that a reasonable basis exists supporting TCEQ's determination that Sierra Club's members were not likely to be impacted by the facility and therefore were not affected persons.[3] *Id.*

---

[3] An example of why the information included in the responses to hearing requests should not be considered evidence appears in this Court's list of the "evidence" in the record supporting TCEQ's decision. The Court explains that there was evidence that neither Ms. Gardner nor Ms. Williams "work[s] or spend[s] any substantial time in or around the [proposed] facility." Slip Op. at 14 (internal quotations omitted). In fact, there is no "evidence" in the record that proves this proposition. It is difficult to imagine what evidence might prove this "negative" proposition, when neither Ms. Gardner nor Ms. Williams offered testimony or was cross-examined. The quoted statement that neither works nor spends time in or around the proposed

4

This Court's analysis—searching the record for some basis to support the agency's denial of a hearing request—creates an insurmountable burden for hearing requestors seeking status as affected persons entitled to a contested case hearing. TCEQ's application review process ensures that the administrative record will always include some information that supports issuing the requested license or permit and denying any hearing requests, particularly if, as this Court suggests, the reviewing court may assume that the Commission's decision relied on all materials included in the record (a record that is developed by TCEQ). Thus, if a hearing requestor seeks to challenge TCEQ's denial of its hearing request, via the court system, TCEQ will always be able to point to some information in the record that supports its decision. And because the hearing requestor is provided with no opportunity to develop evidence of its own (and no notice that it is required to present evidence of its own, refuting TCEQ staff's and WCS's assertions), the record is unlikely to include the requisite evidence necessary for a party

---

facility is an assertion that was included in the Executive Director's staff's response to hearing requests. *But see* 30 Tex. Admin. Code § 55.211(b). This statement, which was signed by the TCEQ Executive Director's staff attorney, with no personal knowledge about Ms. Gardner's and Ms. Williams' work and recreational habits, is simply not reliable and probative evidence in the record that supports TCEQ's denial of Sierra Club's hearing request; in fact, it is more akin to legal argument. *See* Tex. Gov't Code § 2001.171(2)(E) (agency decision must be reversed if it is "not reasonably supported by substantial evidence considering the *reliable and probative evidence* in the record as a whole"); *see also Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987), ("Cross-examination is a safeguard essential to a fair trial and a cornerstone in the quest for truth.").

challenging TCEQ's decision to overcome the substantial evidentiary burden that this Court has adopted.

To be sure, before the hearing request period commences at TCEQ, the Executive Director's staff must first ensure that the license or permit application is administratively and technically complete. That is, the staff must have first reviewed all of the technical information included in the application and made an initial determination that the application complies with all statutory and regulatory requirements. *See* 30 Tex. Admin. Code § 281.21. Staff then prepares a draft permit. *Id.*; *see also id.* § 281.21(b) (executive director shall prepare draft permit consistent with all applicable commission rules unless recommendation is made not to grant application). Thus, the Executive Director's draft permit invariably includes a recommendation that it be issued because it complies with applicable requirements, which carries an assumption that operation of the permitted facility is not likely to adversely impact human health and the environment, if the facility is operated in accordance with the recommended permit terms.

The Commission considers hearing requests only after a draft permit is prepared.[4] Thus, by the time one is provided with the opportunity to request a contested case hearing, the administrative record already includes information

---

[4] The Commission considers these hearing requests at a public meeting, not a public hearing. *But see* slip op. at 5. Further, it is TCEQ's chief clerk who schedules the hearing requests for consideration at a public meeting, not the Executive Director. *See* 30 Tex. Admin. Code § 55.254(c)(2). *But see* slip op. at 9, n. 8, & p. 13.

6

supporting issuance of the requested license or permit. Further, after a hearing request has been submitted, the applicant has an opportunity to add to the administrative record information in support of issuance of the requested permit and denial of the hearing request, ensuring that there is some information in the administrative record to support permit issuance and denial of hearing requests.

By focusing only on whether there is substantial information in the record that supports TCEQ's decision, this Court has delegated complete discretion to TCEQ to deny hearing requests, leaving affected persons with practically no meaningful legal recourse to challenge the denial of their hearing request. This is an unprecedented decision that will undoubtedly affect a variety of persons with legally protected interests who seek to protect their property rights by challenging a permit that could adversely impact those rights, via an evidentiary contested-case hearing.

III. **The Court's opinion avoids reviewing whether TCEQ employed the correct standing analysis in reaching its decision to deny Sierra Club's request for an evidentiary hearing.**

In relying on the substantial evidence standard of review in this case, the Court neglects to examine whether the agency applied the appropriate analysis in reaching its "standing" decision. Indeed, the Court, in essence, has determined that TCEQ need not apply a constitutional standing analysis in determining whether a hearing requestor is entitled to a contested case hearing. *See* Slip op. at 11 (holding

7

that TCEQ has authority to determine "need" for contested case hearing on merits of application). *But see* Tex. Health & Safety Code § 401.264 (stating that Commission *shall* provide opportunity for public hearing on request of person affected).

And by searching the record for only *some* evidence to support the agency's decision—a record that cannot even be considered an "evidentiary" record, because no tribunal was convened to determine whether the documentary information offered is sufficiently reliable to be considered "evidence"—the Court wholly avoids the question of whether the appropriate analysis was employed by the agency in reaching its decision. The Court has essentially ceded to the agency the basic judicial function of determining what analysis to apply when examining whether one has standing to participate in a trial-like procedure to ensure the protection of his or her health, property, and the environment. And, as demonstrated by the facts of this case, TCEQ has elected not to apply a constitutional standing analysis; it has instead simply relied on statements included in legal briefs submitted by TCEQ's staff attorney and WCS's attorney, assuring that the license will not adversely impact anyone, no matter how close they may reside to the facility.

There is no indication that the Legislature intended to vest the agency with the discretion to essentially apply an arbitrary standard to determine whether a hearing

requestor has standing to participate in a hearing or to determine whether there is even a "need" for a hearing, without any meaningful opportunity for review.[5] *See* Tex. Gov't Code § 2001.174 (setting out 6 different bases for reversing an agency decision, including whether the decision violated a constitutional provision, was made through unlawful procedure, was affected by other error of law, or was arbitrary and capricious). TCEQ's own rules do not support such a proposition. *See, e.g.,* 30 Tex. Admin. Code § 55.211(b)(4) (allowing Commission to refer hearing request to SOAH for evidentiary hearing on issue of whether requestor is affected person); (d)(1) (allowing Commission to refer application to SOAH for hearing if in public's interest to do so). And the Supreme Court's decisions in *City of Waco* and *Bosque River Coalition* certainly never went this far.

To be clear, the Court is not being asked, in this case, to determine whether the agency made the correct decision in granting WCS a license. Rather, the Court is being asked to consider whether the agency may deny a contested case hearing to individuals who live less than 5 miles from a radioactive waste disposal facility. Had a contested case hearing been convened, and had the agency issued a license to WCS at the end of that hearing, the district court and this Court may very well

---

[5] Indeed, a review of Chapter 401 of the Health and Safety Code reveals that the Legislature intended to grant TCEQ the discretion to provide an opportunity for a contested case hearing, even if no affected person requested one. *See* Tex. Health & Safety Code § 401.264(a) (allowing commission to provide an opportunity for a hearing on its own motion); *see also* Tex. Water Code § 5.556(f) (allowing Commission to hold a hearing if public interest warrants doing so). *But see* Slip op. 16 (holding that it would have been abuse of discretion if TCEQ granted hearing request without determining requestor was affected person).

have determined that such a decision was supported by the evidence in the record—a record that was created, in part, by those affected by the agency's decision. But, in this case, Sierra Club's members were not even provided an opportunity to contribute to an evidentiary record or to vet the information that WCS and TCEQ contributed to the record. No tribunal—not the agency, not SOAH, and not this Court—has had an opportunity to even determine whether the information in the record is reliable and should be considered "evidence."

In short, TCEQ's decision was based on an arbitrary standing analysis and an arbitrary evidentiary burden. By applying a substantial evidence standard of review, however, this Court avoids reaching the issue of whether TCEQ's legal analyses were proper.

## IV. Neither *City of Waco* nor *Bosque River Coalition* supports the Court's decision in this case.

The supreme court's opinions in *City of Waco* and *Bosque River Coalition* simply do not control the issues presented in this case.

In *City of Waco*, this Court and the Supreme Court were presented with the issue of whether TCEQ erred in denying the City of Waco's hearing request opposing O-Kee Dairy's application to amend a discharge permit. The application was governed by Chapter 26 of the Water Code, and the hearing request determination was governed by Chapter 5 of the Water Code.

This Court determined that TCEQ erred in denying the City of Waco's hearing request; the Court reasoned that the substantial evidence standard of review did not apply where no evidentiary hearing took place. *City of Waco v. Texas Commission on Environmental Quality*, 346 S.W.3d 781, 819 (Tex. App.—Austin 2011), *rev'd on other grounds*, 413 S.W.3d 409 (Tex. 2013). Instead, the Court applied a constitutional standing analysis and determined that the agency erred in resolving questions of fact against the City of Waco without first providing the City an opportunity to present evidence during an evidentiary hearing, particularly where the fact questions involve both standing and the merits of the application. *Id.* at 824-25.

At the Supreme Court, the parties zealously argued over the proper standard of review to be applied to TCEQ decisions denying a hearing requestor a contested case hearing. Several amici weighed in on this issue, as well, providing additional perspectives on the proper standard to be applied by reviewing courts tasked with reviewing the Commission's denial of a hearing request.

Yet, ultimately, the Supreme Court elected not to reach this issue. The court instead focused on whether a legal right to a contested case hearing even existed with regard to the specific type of application at issue in the case: "[E]ven assuming the City might otherwise qualify as an affected person under the statute's definition, it may still not be entitled to a public hearing if section 26.028(d)'s

11

exception reasonably applies."[6] *City of Waco*, 413 S.W.3d at 420; *see also id.* at 424 (noting that Section 26.028(d) allows Commission to approve application to renew or amend permit at regular meeting without necessity of holding a public hearing). *But see* slip op. at 10-11 (explaining that supreme court in *City of Waco* case "reviewed TCEQ's decisions to deny the hearing requests for an abuse of discretion").

The Supreme Court thus focused its analysis on whether the Commission properly exercised its discretion to deny a public hearing on an amended permit that maintains or improves the quality of the discharge and that neither increases significantly the quantity of waste authorized to be discharged nor changes materially the pattern or place of discharge. *Id* at 420. "The issue [] is whether the City has a statutory right to intervene in the permitting process and obtain a contested case hearing under the Administrative Procedure Act." *Id.* at 423.

Ultimately, the Supreme Court determined that there was no legal right to a contested case hearing in the *City of Waco* and *Bosque River Coalition* cases, because an exception to the right to a public hearing applied in those cases, under Section 26.028(d) of the Water Code. Consequently, the Court never reached the

---

[6] The exception to which the Court referred, found in Section 26.028(d), exempts from the public hearing requirement applications to amend or renew a water quality permit that does not seek either to increase significantly the quantity of waste authorized to be discharged if the activities to be authorized will maintain or improve the quality of waste authorized to be discharged and meet certain other requirements. *City of Waco*, 413 S.W.3d at 419 (quoting Tex. Water Code § 26.028(d) &citing 30 Tex. Admin. Code § 55.201(i)(5)).

12

issue of whether the City of Waco or Bosque River Coalition was an affected person. *But see* slip op. at 10-11.

Unlike in *City of Waco* and *Bosque River Coalition*, there is no exception to the right to a public hearing that applies in this case; the applicable statutes do not provide TCEQ with the discretion to determine the need for a contested case hearing regarding the type of application at issue in this case, if the hearing is requested by an affected person. Tex. Health & Safety Code § 401.264 (a) ("The commission . . . on the written request of a person affected shall provide an opportunity for a public hearing on an application . . . to issue, renew, or amend a . . . license to dispose of by-product materials in the manner provided by Chapter 2001, Government Code"). *But see* slip op. at 11 (describing section 401.264 of the health and safety code as allowing TCEQ to determine the need for such a contested case hearing).

It is worth noting that in reaching its decision in *City of Waco*, the Supreme Court distinguished other cases decided by this Court that focused on "the requestor's status as an affected person" without otherwise considering "the person's statutory right to a hearing or statutory exceptions to that right." *City of Waco*, 413 S.W.3d at 424 (citing *United Copper, Indus., Inc. v. Grissom*, 17 S.W.3d 797 (Tex. App.—Austin 2000, pet. dism'd), and *Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288 (Tex. App.—

13

Austin 1998, pet. denied)). The Supreme Court held that *Grissom* and *Heat* did not apply in the *City of Waco* case because those cases focused on "affected party" analysis, where an opportunity for a hearing is required by statute.

There is common sense to creating this public hearing exemption under Water Code Section 26.028(d) for minor amendments or renewals of discharge permits versus an initial application for a new discharge permit, or as in this case, an initial application for a new radioactive by-product disposal facility. The distinction between a permit amendment that improves environmental protections and a new permit for a brand new disposal facility is a significant one. Certainly, Sierra Club's members Ms. Gardner and Ms. Williams are at greater risk of harm because of the new WCS facility—however slight one views that harm to be—than they were prior to the advent of the facility.

Radioactive by-product waste is a potential ground water pollutant that can move in multiple directions, depending upon faults and fractures and the different directions of flow within complex aquifers. Additionally, the radioactive by-product materials must be retained at the disposal facility, below surface, for an infinite amount of time. Thus, it makes sense that the Legislature would not exempt these types of licenses from the right to a public hearing.

By contrast, the right to a public hearing existed when O-Kee Dairy first sought a new discharge permit, under Chapter 26 of the Water Code. But when it sought

14

to amend that permit to include better parameters that would improve the protections included in the permit, the right to a public hearing no longer existed, as the Supreme Court acknowledged.

Finally, as all parties in this appeal argued to this Court, Chapter 401 of the Health and Safety Code provides a definition of "affected person" that differs from the one found in Chapter 5 of the Water Code. *City of Waco* and *Bosque River Coalition* concerned Chapters 5 and 26 of the Water Code, not the Health and Safety Code. This is yet another reason that the two cases do not support the Court's decision in this case.

In short, although presented with the opportunity to employ a substantial-evidence standard of review in determining whether one is an affected person, the Supreme Court elected not to do so in those cases. Further, *City of Waco* and *Bosque River Coalition* involved a different type of application, under a different statute, with different public hearing requirements than the application at issue in this case. The two cases simply do not apply here.

## V.    This Court should have applied a constitutional standing analysis in this case.

Absent a controlling standard of review set out in statute, the proper standard of review to be applied here is the constitutional standing analysis that this Court adopted in *City of Waco*. The Texas Supreme Court has not disavowed this

standard of review, because it did not reach the issue of whether the Commission erred in determining that the City of Waco was not an affected person. Further, the constitutional standing analysis is consistent with federal caselaw involving similar issues.

In its reply brief, Sierra Club cited a D.C. Court of Appeals decision, analyzing whether NIRS and Public Citizen possessed the requisite standing to challenge NRC's decision to grant a uranium enrichment facility license and employing a constitutional standing analysis. *Nuclear Information & Resource Service v. NRC*, 509 F.3d 562 (D.C. Cir. 2007) (the *LES* case). In determining that the protesting parties had standing to challenge the license, the D.C. court of appeals applied a constitutional standing analysis and explained that the Supreme Court and the D.C. Court "have repeatedly held that individuals who live near a proposed federal project and allege they will suffer concrete injury from the project have standing in NEPA and other procedural rights cases." *Id.* at 567 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992)). The Court noted that the protesting parties lived near the proposed facility and alleged a *risk* of injury from radiation generated by the facility. Because the NRC has not identified a suitable disposal strategy for the waste the facility will produce, the waste will be stored at the facility site and will emit harmful radiation, urged the protesting parties. *Id.* The Court agreed that these claims, if successful, would require NRC to take additional

16

procedural steps before granting the license and would at least temporarily prevent construction and operation of the facility near their homes; thus, the protesting parties satisfied the "injury-in-fact" component of constitutional standing jurisprudence. *Id.*

The D.C. Court of Appeals again addressed the constitutional standing requirements for environmental plaintiffs in the case, *Nuclear Energy Institute v. Environmental Protection Agency*, 373 F.3d 1251 (D.C. Cir. 2004) (the Yucca Mountain case). In that case, several environmental organizations (and other parties) challenged the statutory and regulatory scheme devised to establish and govern a Yucca Mountain nuclear waste repository. *Id.* at 1257. To demonstrate standing, the environmental groups relied on the statements by its members, including one who lived and worked 18 miles from Yucca Mountain. *Id.* at 1266. He alleged that EPA's failure to adopt more stringent radiation-protection standards will permit hazardous radionuclides from the buried waste to contaminate his community's groundwater supplies, causing adverse health effects. *Id.*

The Court held that these allegations were more than sufficient to give the member standing to sue in his own right. *Id.* The claimed injury to his ground water supply is neither hypothetical nor conjectural, held the Court. *Id.* And the Court acknowledged that even though radionuclides escaping from the Yucca

repository may not reach the community for thousands of years, the injury is "actual or imminent," because the member lives adjacent to the land where the government plans to bury 70,000 metric tons of radioactive waste—a sufficient harm in and of itself. *Id.* Finally, the Court held that the harm was "fairly traceable" to the challenged agency action, and favorable relief would likely redress the harm. *Id.*

Similarly, this Court should employ a constitutional standing analysis to determine whether Sierra Club was an affected person entitled to a contested case hearing in this case. In doing so, the Court must review Sierra Club's pleadings (its hearing request and reply to responses to its hearing request) to determine whether it alleged sufficient facts to demonstrate compliance with the definition of an affected person. If there are disputed facts, then, Sierra Club must be given an opportunity to present evidence in support of its allegations.

## CONCLUSION AND PRAYER

Sierra Club urges this Court to grant this motion for rehearing en banc and reverse TCEQ's decision denying Sierra Club's hearing request.

Respectfully submitted,

/s/ Marisa Perales
Marisa Perales
SBT No. 24002750

18

Frederick, Perales,
Allmon & Rockwell, P.C.
707 Rio Grande, Suite 200
Austin, Texas 78701
(512) 469-6000
(512) 482-9346 (facsimile)
marisa@lf-lawfirm.com

## CERTIFICATE OF COMPLIANCE

By my signature, below, I hereby certify that Sierra Club's Motion for Rehearing
En Banc contains 4,447 words in the pertinent parts of the document, as calculated
by the computer program used to prepare this document.


     /s/ Marisa Perales     

Marisa Perales

# CERTIFICATE OF SERVICE

By my signature below, I certify that on this 14th day of January, 2015, a copy of the foregoing document was served upon the parties identified below via electronic mail and/or U.S. Postal Mail.

> /s/ Marisa Perales
> Marisa Perales

**FOR THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY:**

Anthony Grigsby
Assistant Attorney General
Environmental Protection and Administrative Law Division
P.O. Box 12548
Austin, Texas 78711-2548
Tel. (512) 463-2012
Fax (512) 320-0911
anthony.grigsby@texasattorneygeneral.gov

**FOR WASTE CONTROL SPECIALISTS, LLC:**

Terry Scarborough
Mike Woodward
Hance Scarborough, LLP
111 Congress Avenue, Suite 500
Austin, Texas 78701
Tel. (512) 479-8888
Fax (512) 482-6891
tscarborough@hslawmail.com
mwoodward@hslawmail.com

Pamela M. Giblin
Derek R. McDonald
Baker Botts
98 San Jacinto Blvd., Suite 1500
Austin, Texas 78701
Tel. (512) 322.2500
Fax (512) 322.8342
pam.giblin@bakerbotts.com
derek.mcdonald@bakerbotts.com